J-S17016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RONALD JAMES STUFFLET, | |
| Appellant | No. 783 WDA 2015 |

Appeal from the PCRA Order April 21, 2015
In the Court of Common Pleas of Bedford County
Criminal Division at No(s): CP-05-CR-0000446-2000

BEFORE:  GANTMAN, P.J., SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MARCH 31, 2016**

Appellant, Ronald James Stufflet, appeals from the order denying his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

The PCRA court summarized the relevant factual underpinnings of the case and the procedural history, as follows:

> On September 14, 2000, [Appellant] was arrested after he went to the home of his wife and children located in Saxton, Bedford County, Pennsylvania, and threatened to kill her.  The wife contacted police.[1]  When the police arrived, [Appellant]

---

[*] Former Justice specially assigned to the Superior Court.

[1]  A prior opinion of this Court noted that Appellant assaulted his wife, but she was able to flee the residence.  When police arrived, the parties' two children, ages five and nine, remained in the residence with Appellant.
*(Footnote Continued Next Page)*

threatened to shoot and kill the [o]fficers with the loaded 12 ga[u]ge shotgun he was holding. A negotiation took place and [Appellant] made several more threats to shoot and kill the [o]fficers while pointing the shotgun at them. Ultimately, the police persuaded [Appellant] to release the children and to put down the gun.

[Appellant], then age 33, was charged with multiple charges and counts which included criminal attempt homicide, aggravated assault, simple assault, recklessly endangering another person, terroristic threats, a firearms violation and receiving stolen property. [Appellant] had a history of mental health problems prior to his arrest, and had been receiving mental health treatment at least since 1992. [Appellant] filed a timely notice of insanity defense and sought to have a psychiatrist appointed and to be committed to a secure institution for treatment. The motion for psychiatric examination was granted. On August 4, 2001, [Appellant] plead guilty but mentally ill to six (6) counts of felony one aggravated assault. The Commonwealth did not seek imposition of the available mandatory sentence under 42 Pa.C.S.A. §9712. Pursuant to 42 Pa.C.S.A. [§] 9727(a), a hearing was scheduled for November 2, 2001.

On November 2, 2001, [Appellant] was sentenced pursuant to a plea agreement. No specific finding was made in the sentence that [Appellant] was severely mentally disabled and in need of treatment. [Appellant] received an aggregate sentence of [not less than] one year less one day nor more than two years less one day in the county jail and twenty years of probation. [Appellant] had served his minimum sentence by that date, and he was paroled to a Huntingdon County detainer.

The probation conditions contained in the order required:

a. [Appellant] would participate in prescribed treatment.

b. Take prescribed medication.

c. Live with his parents.

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

***Commonwealth v. Stufflet***, 842 WDA 2011, 75 A.3d 540 (Pa. Super. filed April 1, 2013) (unpublished memorandum at 1).

- 2 -

d. Have no contact with his wife and contact with his children only as approved by the Court.

e. No guns were to be allowed at the parents' address.

f. No alcoholic beverages.

g. A mental health status was to be submitted as required by law.

[A]ppellant was represented by counsel at all stages of the proceedings.

In 2008, [Appellant] was convicted in Delaware County, Pennsylvania, of a Misdemeanor 1, corrupting morals of children and received a sentence of time served to 23 months. Bedford County authorities then filed a probation violation petition. On Wednesday, July 30, 2008, at the Gagnon I hearing,[2] [Appellant] agreed to the violation based on the conviction in Delaware County. A Gagnon II hearing was scheduled. After the Gagnon I hearing, the Commonwealth in October of 2008, amended the revocation petition to further allege 20 violations of the [probation] provision [that Appellant] not contact his wife. The Commonwealth also filed in October of 2008, a notice of its intention to seek a mandatory sentence pursuant to 42 Pa.C.S.A. §9712. To comply with the requirements of 42 Pa.C.S.A. [§] 9727 and *Commonwealth v. Davis*, 612 A.2d 426 (Pa. 1992), a hearing was held pursuant to the Mental Health Procedure[s] Act[,] and on November 19, 2008, the Mental Health Review Officer found [Appellant] to be severely mentally disabled and in need of treatment pursuant to Section 304(c) of the Act of 1966. The [trial court] affirmed the findings and committed [Appellant] to Mayview State Hospital for inpatient treatment for a period of up to 90 days. As Mayview closed in November 2008, [Appellant] was placed at Torrence State Hospital where he remained until January 30, 2009, when he was returned to Bedford for his sentencing on February 2, 2009. On that date

_____

2   The United States Supreme Court has held that due process requires probationers to be given two separate hearings, known as *Gagnon I* and *Gagnon II* hearings, prior to revoking probation. *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973).

after a hearing pursuant to 42 Pa.C.S.A. §9727, the [c]ourt found [Appellant] to be severely mentally disabled and in need of treatment pursuant to the Mental Health Procedure[s] Act. In accordance with 42 Pa.C.S.A. §9727(b)(1), the Order directed, consistent with available resources, [Appellant] was to be provided such treatment as is psychiatrically or psychologically indicated for his mental illness. The sentence itself was an aggregate sentence of 15 years to 45 years in a State Correctional Institution.

[Appellant] told his attorney he did not wish to appeal the sentence and no appeal was filed. In October of 2009, [Appellant] sought to file an appeal *nunc pro tunc*. A hearing was held on the issue on January 8, 2010. After [the] hearing, the court denied the request finding, in part, that at the time of sentencing, there was no indication [Appellant] was unable to comprehend the proceedings. Also, it was not contested that the [c]ourt had advised [Appellant] about the appeal period.

In January 2010, [Appellant] filed a [PCRA petition]. In February of 2010, [Appellant] filed an "*Emergency Petition of Habeas Corpus*". In March of 2010, [Appellant] filed an "*Amended Petition for Writ of Habeas Corpus Pursuant to the Mental Health Act".*

The [c]ourt assigned counsel on April 20, 2010 and directed counsel to file an amended petition or designate to the [c]ourt, the petition [Appellant] intended to proceed on. Further, if counsel wanted a psychiatric evaluation, the same should be requested. On May 24, 2010, counsel filed for an evaluation. The [c]ourt scheduled a hearing for June 7, 2010. On June 11, 2010, the hearing was continued to June 15, 2010. This hearing was to be conducted by video conference. The hearing was not held on that date. . . . A hearing was rescheduled for January 21, 2011, and was . . . held on that date.

[Appellant] described a number of problems arising from his mental disorder, including a lack of concentration, paranoia, anger issues and memory loss.

As a result of the hearing, the [c]ourt directed the doctors at Graterford, pursuant to the Mental Health Procedure Act, 50 P.S. Section 4411 and 7407, to provide the [c]ourt with a mental evaluation and a certification whether Graterford could adequately provide treatment for [Appellant].[3] [Appellant] filed a timely appeal to the [c]ourt[']s order on April 1, 2013. A panel of the Superior Court affirmed the trial [c]ourt's [o]rder. [**Commonwealth v. Stufflet**, 842 WDA 2011, 75 A.3d 540 (Pa. Super. filed April 1, 2013) (unpublished memorandum)] On October 2013, [Appellant's] petition for allowance of appeal was denied. [**Commonwealth v. Stufflet**, 207 WAL 2013, 77 A.3d 637 (Pa. 2013)].

PCRA Court Opinion, 4/22/15, at 1–4.

Appellant filed the present PCRA petition, his second, on January 14, 2015, and a supplemental petition on April 17, 2015. On April 22, 2015, the PCRA court denied Appellant's petition as untimely. Appellant filed this timely appeal on May 8, 2015.[4] The PCRA court filed an opinion on April 22, 2015.

Appellant raises the following issues in his brief on appeal:

   I.   Did the PCRA Court err by holding that the newly-discovered evidence relating to Appellant's brain injury

_____

[3] In the prior PCRA proceeding, Appellant, who was incarcerated at SCI Graterford, did not seek to have his convictions set aside; rather, he sought to have his prison sentence modified to placement in a mental hospital. The prior PCRA court denied Appellant's PCRA petition.

[4] Along with his notice of appeal, Appellant filed a statement pursuant to Pa.R.A.P. 1925(b), noting that he was filing it "out of an abundance of caution . . . ." Statement of Concise Errors Complained of on Appeal, 5/8/15, at 2. This Court obtained the statement from Bedford County Clerk of Courts because the statement was missing from the record certified to us on appeal.

does not meet the statutory requirements of Title 42 Pa.C.S. § 9545(b)(1)(ii)?

II.    Did the PCRA Court err by not providing Appellant with a notice of intent to dismiss, pursuant to Pennsylvania Rules of Criminal Procedure 907 prior to summarily disposing of his PCRA petition?

III.   Does the interest of justice require a remand for the purpose of holding an evidentiary hearing?

Appellant's Brief at 4.

When reviewing the propriety of an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Stultz*, 114 A.3d 865, 872 (Pa. Super. 2015) (quoting *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa. Super. 2012). We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. *Commonwealth v. Rigg*, 84 A.3d 1080, 1084 (Pa. Super. 2014). "There is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008) (quoting *Commonwealth v. Barbosa*, 819 A.2d 81 (Pa. Super. 2003)). "[S]uch a decision is within the discretion of the PCRA court and will

not be overturned absent an abuse of discretion." ***Commonwealth v. Mason***, ___ A.3d ___, ___, 2015 WL 9485173 at *6, 676 CAP 2015 (Pa. 2015) (decided December 29, 2015).

A PCRA petition must be filed within one year of the date that the judgment of sentence becomes final. 42 Pa.C.S. § 9545(b)(1). This time requirement is mandatory and jurisdictional in nature, and the court may not ignore it in order to reach the merits of the petition. ***Commonwealth v. Murray***, 753 A.2d 201, 203 (Pa. 2000). A judgment of sentence "becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3).

Our review of the record reflects that Appellant's judgment of sentence became final on March 4, 2009, thirty days after the trial court imposed the judgment of sentence, and Appellant failed to file a direct appeal with this Court. 42 Pa.C.S. § 9545(b)(3); Pa.R.A.P. 903(a). Thus, a timely PCRA petition had to have been filed by March 4, 2010. Appellant did not file the instant PCRA petition until January 14, 2015.

As noted, the PCRA court dismissed the petition as untimely. Nevertheless, an untimely petition may be received when the petition alleges, and the petitioner proves, that any of the three limited exceptions to the time for filing the petition, set forth at 42 Pa.C.S. § 9545(b)(1)(i), (ii),

and (iii), is met.[5] "However, the PCRA limits the reach of the exceptions by providing that a petition invoking any of the exceptions must be filed within 60 days of the date the claim first could have been presented." *Commonwealth v. Walters*, ___ A.3d ___, ___, 2016 PA Super 42, at *2 (Pa. Super. 2016) (filed February 19, 2016) (citing *Commonwealth v. Leggett*, 16 A.3d 1144, 1146 (Pa. Super. 2011) and 42 Pa.C.S. § 9545(b)(2)).

Appellant asserted in his PCRA petition and maintains here that a neuropsychological assessment ("Neuropsych Summary") that was completed between August 21, 2014, and September 10, 2014, qualifies as "facts upon which the claim is predicated [and] were unknown to the petitioner and could not have been ascertained by the exercise of due

---

[5] The exceptions to the timeliness requirement are:

(i)    the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii)    the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii)    the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i), (ii), and (iii).

diligence."[6]  42 Pa.C.S. § 9545(b)(1)(ii); Appellant's Brief at 9; PCRA Court Opinion, 4/21/15, at 4.  Appellant asserted in his PCRA petition that this "new evidence establishes, in no uncertain terms, that at the time of [Appellant's] plea he was not just mentally ill, but also suffered from significant brain injury that prevented him from entering into a knowingly and intelligent plea."  PCRA Petition, 1/23/15, at 2 (emphasis in original). Appellant contends that the PCRA court erred in concluding that "the newly-discovered evidence relating to Appellant's brain injury does not meet the statutory requirements of Title 42 Pa.C.S. § 9545(b)(1)(ii)."  Appellant's Brief at 10.  Appellant challenges the PCRA court's conclusion, suggesting "it simply does not make any sense . . . ."  *Id*. at 15.  Appellant suggests that he was aware only that he suffered from "bipolar and/or schizoaffective disorder" and did not know he had a brain injury until so informed by the Neuropsych Summary.  *Id*. at 14.  Thus, Appellant maintains that because he could not have consulted with his counsel "with a reasonable degree of rational understanding," he should be permitted to withdraw his plea of guilty but mentally ill.  *Id*. at 18.

"Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in

---

[6]  The PCRA court and Appellant represented that Appellant received the Neuropsych Summary on November 20, 2014.  PCRA Court Opinion, 4/21/15, at 4; Appellant's Brief at 13.

discovering those facts." ***Commonwealth v. Brown***, 111 A.3d 171, 176 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1197 (Pa. 2015) (citing 42 Pa.C.S. § 9545(b)(1)(ii)). The new-facts exception of 42 Pa.C.S. § 9545(b)(1)(ii):

> has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) the facts upon which the claim was predicated were unknown and 2) could not have been ascertained by the exercise of due diligence. If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.

***Brown***, 111 A.3d at 176-177 (quoting ***Commonwealth v. Bennett***, 930 A.2d 1264, 1272 (Pa. 2007)).

We agree with the PCRA court that the Neuropsych Summary does not qualify as facts that were unknown to Appellant or that could not have been ascertained by the exercise of due diligence. The PCRA court stated as follows:

> The difficulty with [Appellant's] argument is that while this assessment was recently made, it is based in part on a history of head injuries known by him and [information] provided by him, therefore known to him long before the evaluation was completed. After his resentencing on February 9, 2009, [Appellant] failed to pursue a direct appeal. On October 9, 2009, [Appellant] through Counsel filed for permission to appeal *nunc pro tunc*. In that petition, [Appellant] recites his mental health history including his 90-day commitment to Mayview State Hospital, Torrence, for inpatient treatment. [Appellant] argued in his *nunc pro tunc* request that, at the time of his appeal, he was not in a mental state to knowingly, voluntarily, and intelligently waive his right to direct appeal or decide to not appeal his sentence (motion to file *nunc pro tunc* appeal, paragraphs 6-10). [The trial court] denied this motion by order dated January 13, 2010.

- 10 -

At the hearing on his first PCRA petition, [Appellant] alleged problems arising from his mental disorder, including lack of concentration, paranoia, anger issues and memory loss. These are the same problems as were noted in the 2014 assessment. No issues were raised in his PCRA hearing other than his request to be placed in mental hospital. The only constitutional issues raised were under the Federal Constitution Eighth Amendment. As to the substance of [Appellant's] present claims, [the PCRA court's] 2010 memorandum notes "He was committed to Mayview State Hospital on or about November 19, 2008, was released and was present at the proceeding conducted February 2, 2009." (sentencing hearing). "There was no indication at that time that he was unable to comprehend the proceedings, nor was any indication given to the Court during the appeal period that his mental status had changed."

\* \* \*

All the information in [Appellant's] present PCRA petition was readily available at the time of the first post conviction hearing act petition and was known to [Appellant] or could have been found by any reasonable investigation. Therefore, it appears at a minimum [Appellant] should have raised these issues in his first petition. So even if it was determined that the facts alleged qualify pursuant to 42 Pa.C.S.A. §9545(b)(1)(ii), [Appellant] did not file within 60 days of the date the claim could have been presented as required by 42 Pa.C.S.A. § 9545(b)(2).

PCRA Court Opinion, 4/21/15, at 5–6.

The Neuropsych Summary indicates that on August 21, 2014, Ms. Krista Coons evaluated Appellant using the Traumatic Brain Injury Questionnaire ("TBIQ") during a clinical interview. Neuropsych Summary, 11/20/14, at 1; PCRA Petition, 1/23/15, at Exh. A. Review of the Neuropsych Summary reveals that the TBIQ responses were provided by Appellant himself. There were no new medical tests, scans, or procedures

that were utilized in the evaluation; it merely involved self-reported

incidents by Appellant, as revealed by the following passage:

> Episodes of potential traumatic brain injury began in 1969 at the age of 2 or 3 when [Appellant] was hit by a softball in the head while watching a game in the stands. He was unsure as to whether or not he was treated in hospital, lost consciousness, or experienced any post- traumatic amnesia. In 1971, at age 4 or 5, he was hit in the head with a rock. Again, he was unsure as to whether or not he was treated, lost consciousness, or experienced post- traumatic amnesia. In 1975 while in the fourth grade, [Appellant] reported that he fell out of the school bus onto his head. Again, he was unsure as to whether or not he was treated, lost consciousness, or experienced post-traumatic amnesia.
>
> In 1982 at the age of 16, [Appellant] reported that he was in a fight in which he was hit and briefly dazed, but was not treated. In 1983, he reported that he was hit in the head with a nightstick and again dazed briefly. He was not treated and did not recall a period of post-traumatic amnesia. Also in 1983, [Appellant] fell down 15 concrete steps. He reported that he lost consciousness for between 5 minutes and an hour but was unsure of a post-traumatic amnesia. He was not treated for this episode. [Appellant] also reported that he was in several motorcycle accidents and at least one car accident, in 1988. He reported likely being dazed in each of these events. Another potential of brain injury was being "choked out" in a [sic] several fights. Notably, [Appellant] reported that he was treated by a psychiatrist at Bryn Mawr Hospital who diagnosed him with organic frontal lobe disorder . . . .

Neuropsych Summary, 11/20/14, at 1; PCRA Petition, 1/23/15, at Exh. A.

Clearly, all of the incidents of possible brain injury occurred more than a

decade before his plea in 2001; all of the incidents were known to Appellant

since 1988, at the latest.

We conclude that Appellant has not established the applicability of 42

Pa.C.S. § 9545(b)(1)(ii) or any other exception to the PCRA timeliness

requirements; thus, the PCRA court properly dismissed Appellant's petition as untimely. Therefore, we lack jurisdiction to reach the merits of the appeal. *See Commonwealth v. Taylor*, 67 A.3d 1245, 1249 (Pa. 2013) ("PCRA time requirement mandatory and jurisdictional in nature; court cannot ignore it and reach merits of petition."); *Commonwealth v. Hernandez*, 79 A.3d 649, 655 (Pa. Super. 2013) (holding that Superior Court lacks jurisdiction to reach merits of appeal from untimely PCRA petition). Because the PCRA petition was untimely and no exceptions apply, the PCRA court lacked jurisdiction to address the claims presented. Likewise, we lack jurisdiction to reach the merits of the appeal. *Commonwealth v. Johnson*, 803 A.2d 1291, 1294 (Pa. Super. 2002).[7]

Order affirmed.

_____

[7] Because we conclude that we lack jurisdiction to address the merits of the appeal due to the untimeliness of the instant PCRA petition, as did the PCRA court, we need not address Appellant's second and third issues. Moreover, we note that where a PCRA petition is untimely, the failure to provide notice pursuant to Pa.R.Crim.P. 907 "is not reversible error." *Commonwealth v. Lawson*, 90 A.3d 1, 5 (Pa. Super. 2014) (citing *Commonwealth v. Pursell*, 749 A.2d 911, 917 n.7 (Pa. 2000)). Thus, the failure of the PCRA court to provide such notice does not entitle Appellant to relief.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/31/2016